**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JESSE ANAYA,<br><br>    Plaintiff,<br><br>v.<br><br>WILLIAM T. BIRCK, BRYAN KREUGER, AND REED ILLINOIS CORPORATION,<br><br>    Defendants. | No. 21 C 2624<br><br>Hon. LaShonda A. Hunt |
| REED ILLINOIS CORPORATION,<br><br>    Counter-Plaintiff,<br>v.<br><br>JESSE ANAYA,<br><br>    Counter-Defendant. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Jesse Anaya ("Anaya") filed this lawsuit against his former employer, Reed Illinois Corporation ("Reed"), and its executives, William T. Birck ("Birck") and Bryan Kreuger ("Kreuger"), (collectively, Defendants). In his First Amended Complaint ("FAC"), Anaya asserts claims of retaliation in violation of 42 U.S.C. § 1981 against Defendants for failure to promote (Count I) and termination of employment (Count II), and against Reed for filing counterclaims in this action (Count III).[1] Anaya also claims that Reed violated the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") by failing to notify him of his rights under the Act (Count V). Contending that Anaya was terminated for engaging in unauthorized conduct related to its

---

[1] Anaya voluntarily dismissed his discrimination claim against Reed (Count IV) in October 2022. (Dkt. 104).

1

computer systems, Reed filed counterclaims against him for violation of the Computer Fraud and Abuse Act ("CFAA") (Count I), breach of fiduciary duty (Count II), and breach of contract (Count IV).[2]

Currently, before the Court are the parties' cross-motions for summary judgment. Anaya moves for partial summary judgment on liability on Counts II, III, and V of his FAC and summary judgment on Reed's counterclaims. Defendants move for summary judgment on all claims in the FAC—Counts I-III and V—and Reed's counterclaims. In addition, shortly before filing his motion for summary judgment, Anaya moved for sanctions under Fed. R. Civ. P. 11(c) against Reed and its attorney. For the reasons stated below, Anaya's motion for summary judgment [117] is granted in part and denied in part, Defendants' motion for summary judgment [120] is granted in part and denied in part, and Anaya's motion for sanctions [110] is denied.

## BACKGROUND

The facts are taken from the parties' Local Rule 56.1 statements and are undisputed unless otherwise noted. Anaya, a Hispanic male, was employed by Reed as the Information Technology Manager from August 20, 2014 until his termination on April 23, 2021. In that role, Anaya was responsible for overseeing Reed's IT infrastructure, including the maintenance of all databases, systems, servers, and network infrastructure.

During his employment, Anaya received a copy of Reed's Employee Handbook. Among other information, the Handbook contained policies that (1) prohibited harassment, discrimination, and retaliation, and included complaint procedures; (2) described confidentiality obligations; (3) related to paychecks; (4) addressed computer, email, and internet use, including the duty to not delete or destroy any data, files, or programs, except in the ordinary course of business (i.e. deletion

---

[2] Reed voluntarily dismissed Count III alleging claims against joinder defendant Emma Fairweather in December 2021. (Dkt. 60).

of an email after it is read); and (5) described personnel records and related obligations. Additionally, Anaya signed a Confidentiality Agreement (the "Agreement").

Emma Fairweather ("Fairweather"), a Black woman from Belize who served as Reed's Human Resources Manager, was Anaya's direct supervisor from sometime in 2018 until April 13, 2021. Fairweather conducted annual reviews and engaged in quarterly performance discussions with Anaya, including an annual review in June 2020.

On March 17, 2021, Fairweather emailed Kreuger, Reed's President and Chief Operating Officer, a proposal to expand the IT department and promote Anaya, which she asked Krueger to consider during Anaya's upcoming annual review. Specifically, Fairweather proposed that: "During [Anaya's] annual review, I would like to raise his base salary to $125,000 annual and I would also like to change his title to Senior IT Manager." (Defs.' Resp. to Plt.'s Statement of Facts (SOF), ¶ 12, Dkt. 135). Fairweather stated that: "[Anaya] is currently underpaid for the work her [sic] performs and also size of workload with no support" and that she also "strongly believes that [Anaya] needs a full-time entry level administrator (future hire)." *Id.*

Anaya did not see Fairweather's proposal before she sent it to Kreuger. But afterwards, Fairweather emailed a copy of the proposal to Anaya and told him that she submitted it to Kreuger "for [Anaya's] annual." (Defs.' Rule 56 SOF, Ex. J., Dkt. 122-12). Fairweather told Anaya that the proposal was "confidential" and, in a follow-up email, suggested that they "always watch out for each other." (*Id.*)

Less than a month later, on April 13, 2021, Fairweather gave notice of her resignation from Reed. Attached to the notice was a 12-page memorandum (including exhibits) in which Fairweather identified several workplace concerns related to gender and race discrimination. For example, Fairweather stated that as the only African American woman within the company and on

the leadership team, she was treated unfairly with regard to workload distribution and compensation. Additionally, Fairweather raised concerns about Kreuger's lack of response to her proposal to promote Anaya. Comparing Anaya to herself, Fairweather stated that he was "another underpaid minority in the company" who was also "responsible for the workload of an entire department with no assistance." (Plt.'s Resp. to Defs.' SOF, Ex. 1 at 586, Dkt. 131-1). Fairweather noted that when a white female raised concerns about her compensation, the situation was immediately rectified with a 17% increase. On either April 13 or April 14, 2021, Fairweather met with Birck and others (the parties disagree about the exact date of the meeting and who was present) to discuss the allegations in her memorandum.[3] Fairweather also sent a copy of her memorandum to Anaya.

On April 14, 2021, Ashley Polino ("Polino"), Chief Financial Officer at Reed, assumed oversight for the HR and IT departments, and thus became Anaya's direct supervisor. At 11:48AM, Kreuger forwarded Fairweather's email proposal about Anaya to Polino, stating: "See below. Emma's [sic] proposed raising Jesse's salary by $13,000 to $125,000 and proposed promoting him to Senior IT Manager. I don't necessarily agree. Let's discuss." (Plt.'s Resp. to Defs.' SOF, ¶ 35, Dkt. 131). Kreuger claims he shared the proposal then because he wanted to be fair and let Anaya's new supervisor know what his old supervisor thought of his performance. According to Kreuger, he disagreed with Fairweather's proposal because: (1) Reed had just reduced its workforce by 30% so there were fewer employees who needed help resolving IT issues; (2) he did not believe Anaya was undercompensated based on the market; and (3) Reed had recently experienced problems with its IT infrastructure, such as the computer systems going down completely, a Wi-Fi outage during an important sales presentation, and ongoing issues with AV set up.

___

[3] Although Fairweather provided two-weeks' notice of her resignation, her employment at Reed ended a few days after this meeting.

Also, at some point that same day—April 14, 2021—Kreuger met with Anaya. The parties dispute the exact timing, with Anaya claiming they met *before* Kreuger sent the email to Polino and Defendants claiming they met *after* Kreuger sent the email to Polino. It is undisputed, though, that during the meeting, Anaya told Kreuger that he believed Defendants were racist, he had been treated unfairly because he is Hispanic, and he was going to sue Reed. Anaya further contends, but Defendants dispute, that Kreuger asked him to take Reed's side in anticipated litigation with Fairweather. After the meeting, Kreuger met with Birck and told him about the issues Anaya raised.

Sometime later that day, Birck met with Anaya. Defendants contend the reason for the meeting was to discuss who Anaya would be reporting to and to tell him about Reed's plans to investigate the race complaints that had been made by Anaya and Fairweather. Similar to the conversation with Kreuger, Anaya told Birck that he believed Reed was racist, he was not promoted because of that, and he was going to complain to the EEOC. Birck asked Anaya to cooperate with an internal investigation of the racism claims. Additionally, Anaya says, but Defendants dispute, Birck told him to "turn on" Fairweather. The following day, Reed retained an investigator, who Anaya did not meet with because he did not trust Reed.

Several days later, on April 19, 2021, Reed retained FTI Consulting, an outside forensic computer consultant, to investigate whether Anaya was accessing staff members' emails and whether there were any communications between Anaya and Fairweather about her memorandum. Anaya insists that Reed hired the consultant to prepare for litigation.

Two days later, on April 21, 2021, FTI Consulting reported that Anaya had given himself delegate access to the email accounts of five senior leadership members, which allowed Anaya to read the messages in their email accounts directly from his own mailbox. Anaya testified that his

purpose for doing so was to be able to monitor their accounts for spam, ransomware, or phishing activity.

A couple days later, on April 23, 2021, Birck called Anaya at 7:40AM. Though Birck knew at the time of their call that Anaya had given himself delegate access to leadership email accounts, Birck admits he did not intend to fire Anaya during that conversation. Defendants contend the purpose of the call was to instruct Anaya that he was not authorized to access Reed's systems until further notice and to arrange for a messenger to pick up Anaya's company laptop. Conversely, Anaya claims the purpose of the call was for Birck to again tell Anaya to cooperate with the investigation and turn on Fairweather.

Sometime later that same day, FTI Consulting reported to Reed's counsel that Anaya had forwarded a handful of confidential company emails to his personal email account on April 14, 2021. These documents included (1) a Birck email chain referencing a Fox News article, (2) Krueger's email to Polino forwarding Fairweather's proposal for Anaya's promotion, (3) Anaya's annual review, (4) correspondence between Birck, Kreuger, Polino, and a public relations firm, (5) a contract proposal from the public relations firm, (6) a document from Fairweather to Birck about Fairweather's restricted computer access, (7) a list of passwords, and (8) a set of communications between Birck, Kreuger, and Reed's counsel.

Anaya maintains that he sent the documents to himself because he suspected that he would be fired soon. Although Anaya testified that he has not used the documents to do anything other than prosecute this litigation, Reed speculates that Anaya might have shared certain information directly with Fairweather when she did not have legal counsel. After analyzing Anaya and Fairweather's Reed-issued computers and phones, FTI did not find any evidence of coordination between them. Still, Reed believes that is because they were using their personal cell phones to

communicate, rather than company devices. Reed incurred costs of $43,873.07 for FTI's services between April and July 2021.

Anaya was terminated sometime on the afternoon on April 23, 2021 (the parties do not state an exact time). His termination was communicated through a letter sent via a messenger to Anaya's home in Mokena, Illinois. According to Reed, Anaya was terminated for engaging in unauthorized and potentially illegal activity on Reed's computer systems and because he could no longer be trusted. It is undisputed that Reed typically makes hiring and firing decisions as a team, with the affected employee's manager having input, but here, Polino did not know that Anaya was going to be terminated until after it happened.

Upon terminating Anaya, Reed was unable to access certain systems and files. While employed at Reed, Anaya and Fairweather had access to a password protected spreadsheet, which contained passwords to many of Reed's systems and files. During a department meeting on April 21, 2021, Polino had asked Anaya to provide her with the password to the spreadsheet. Anaya contends that Polino gave him a ten-day deadline to respond. At the time of his termination on April 23, 2021, Anaya had not yet complied with Polino's request. After his termination, Reed retained Fulton May Solutions to help gain access to the systems it was locked out of and to restore passwords. On May 5, 2021, Reed requested the password for the spreadsheet from Anaya's counsel and received it the same day.

Anaya claims that after his termination, he did not receive notice of his rights pursuant to COBRA. Reed utilized Paycom as its payroll provider and third-party administrator for COBRA notices. On April 28, 2021, Paycom issued a COBRA Notice to Anaya at 939 N. Arbogast St., Griffith, Indiana, even though Anaya had apparently moved to Mokena, Illinois in November 2019. Though Anaya does not recall submitting updated state or federal W–4 information with a different

address after he moved, he testified that he logged onto Paycom to change his address and that he told Fairweather about his move verbally and via email. Anaya's final paystub reflects the Griffith, Indiana address.

This litigation followed, with Anaya suing Defendants for retaliation, discrimination, and COBRA violations, and Reed counterclaiming that Anaya unlawfully accessed certain IT systems and documents. After contested discovery, each side filed a motion for summary judgment. Anaya further seeks Rule 11 sanctions against Reed and its attorney, Kearney Kilens, for filing counterclaims against him. The motions are fully briefed and ripe for ruling.

## **LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016). "Where . . . the movant is seeking summary judgment on a claim as to which it bears the burden of proof, it must lay out the elements of the claim, cite the facts which it believes satisfy these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim. . . . If the movant has failed to make this initial showing, the court is obligated to deny the motion." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015). In cases where the movant does not bear the burden of proof, the movant must simply point to an absence of evidence to support the nonmovant's case. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a

genuine issue for trial," *Celotex*, 477 U.S. at 324, and support their position with "more than a scintilla of evidence." *Conley v. Vill. of Bedford Park*, 215 F.3d 703, 709 (7th Cir. 2000).

At the summary judgment stage, the court's function is to "determine whether there is a genuine issue for trial," not to make determinations of truth or weigh evidence. *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087 (7th Cir. 2018). All facts and inferences are construed in the light most favorable to the nonmoving party. *Nischen v. Stratosphere Quality, LLC*, 865 F.3d 922, 928 (7th Cir. 2017).

## DISCUSSION

Anaya contends that his complaints about discriminatory treatment and support of his former supervisor Fairweather's claims of racism, caused Defendants to retaliate against him by refusing to promote him and terminating his employment for pretextual reasons. Defendants disagree and argue that this case is about an IT Manager who abused the trust placed in him by surreptitiously reading emails of senior leadership, forwarding confidential information to his personal email account, and refusing to provide critical access passwords post-termination. After considering the parties' arguments and reviewing the record on summary judgment, the Court finds that a genuine factual dispute exists as to Anaya's retaliatory termination cause of action (Count II of the FAC) only. All other claims in the FAC and counterclaim fail as a matter of law.

## I.    Anaya's FAC

### A.    Failure to Promote (Count I)

Defendants argue that they are entitled to summary judgment on Anaya's failure to promote claim because there is no evidence that Anaya was denied a promotion. In support of their argument, Defendants explain that employee compensation is reviewed at the time of an employee's annual review, which Anaya was not scheduled to receive until June 2021. In response,

Anaya points to Krueger's April 14, 2021 email to Polino rejecting Fairweather's recommendation of a raise and promotion. Defendants assert that Kreuger was not communicating that Anaya was being denied a promotion; rather, Krueger was informing Anaya's new supervisor about his prior supervisor's recommendation. The purpose of Kreuger's email, however, is immaterial because Anaya has failed to prove that a Senior IT Manager position existed, let alone that he applied for it.

"[W]hen the failure-to-promote is allegedly retaliatory, the plaintiff must show the following to meet his prima facie burden: (1) he engaged in statutorily protected activity; (2) he applied for and was qualified for the position sought; (3) he was rejected for that position; and (4) the employer granted the promotion to someone who did not engage in statutorily protected activity, and who was not better qualified than the plaintiff." *Carter v. Chi. State Univ.*, 778 F.3d 651, 660 (7th Cir. 2015). "It is axiomatic that in order to succeed on a failure-to-promote claim, a plaintiff must first show that []he actually applied for the position." *Reaves v. Maximus Inc.*, No. 19 C 04171, 2021 WL 248281, at *9 (S.D. Ind. Jan. 26, 2021) (citing *Carter*, 778 F.3d at 660). "Summary judgment for the employer is appropriate if the employee fails to establish any of the elements of a prima facie case for failure to promote." *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 892 (7th Cir. 2016) (citing *Atanus v. Perry*, 520 F.3d 662, 673 (7th Cir. 2008)).

In *Burks v. Union Pac. R.R. Co.*, 793 F.3d 694, 696 (7th Cir. 2015), plaintiffs alleged their employer denied them the opportunity to take a test required for a promotion after they filed complaints of discrimination. In support of his retaliation claim, one plaintiff said that he asked his supervisor whether he would be promoted and argued that speaking with his supervisor constituted an application. *Id.* at 701. The *Burks* court rejected plaintiff's argument because "he present[ed] no evidence to support the contention that merely speaking to a supervisor about

promotion constituted an 'application' under [the employer's] procedures." *Id.* Additionally, the court found that the plaintiff did not "present[] any evidence that the recommendation of a supervisor to another party—a human resources official or anyone else—would constitute an application." *Id.*

The same reasoning applies here. Anaya has not shown that he applied for a promotion to Senior IT Manager or any other position at Reed.[4] Fairweather's proposal to Kreuger certainly did not constitute an application. In fact, Fairweather merely recommended that Kreuger consider during Anaya's annual review to be held *a few months later* changing Anaya's title to Senior IT Manager and increasing his pay, in addition to a *future hire* of an entry-level administrative assistant to help Anaya better support the company's IT needs. (*See* Dkt. 131, ¶ 21) (emphasis added). In other words, her proposal reads more like an idea presented to senior leadership to improve the functionality of the IT Department she oversaw.[5] Nothing about her forward-looking statements indicated that such a position was available for Anaya to fill at that time, let alone that she was applying for a promotion on his behalf in February 2021. And because Anaya himself did not see Fairweather's "confidential" proposal before she submitted it to Kreuger, it would strain credulity for this Court to find that he submitted an application for a Senior IT manager position in February 2021.

Anaya emphasizes his subsequent complaint in April 2021 that Reed had not promoted him because it was racist, but that is not sufficient to create an issue of fact as to whether Defendants retaliated against Anaya by denying him a promotion. Anaya concedes that no one from Reed has

---

[4] As a threshold matter, Anaya has failed to present evidence of an open position. His claim therefore fails as a matter of law for this additional reason. *See Jones v. City of Springfield, Ill.*, 554 F.3d 669, 673 (7th Cir. 2009) ("[A] prima facie case presupposes the existence of an open position.").

[5] Not long thereafter, Reed experienced major issues with its computer operations. (*See id.*, ¶¶ 27-28).

ever told him that he was denied a promotion. (*See* Dkt. 131, ¶ 26). That seems consistent with Kreuger's email to Anaya's new supervisor, Polino, indicating that he disagreed with Fairweather's proposal and wanted to discuss it further, presumably with the individual who would now be responsible for conducting Anaya's forthcoming annual review. In short, the record does not reflect that a final decision had been definitively reached regarding a possible promotion for Anaya.

Moreover, Anaya has not offered any evidence to demonstrate how promotion decisions were made at Reed, either formally or informally, to suggest that Defendants were treating him differently than other Reed employee recommended for promotion during the annual review period by his supervisor. Instead, Anaya relies solely on the close proximity between Kreuger's email to Polino and his complaints about racism, but even suspicious timing cannot save a retaliatory failure to promote claim absent some evidence that promotion was a viable option. *See Jaburek v. Foxx*, 813 F.3d 626, 631 (7th Cir. 2016) (finding that plaintiff failed to prove a prima facie case because "[h]aving not applied for the position, she could not have been rejected for the position."); *Riley*, 829 F.3d at 892 (Plaintiff "cannot prove a prima facie case . . . because she never applied for the positions.").

Accordingly, summary judgment is granted in favor of Defendants on Count I of the FAC.

## B. <u>Termination (Count II)</u>

To prevail on his retaliatory termination claim, Anaya must identify sufficient evidence for a jury to find: (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two. *Gross v. Peoples Gas Light & Coke Co.*, 634 F. Supp. 3d 464, 496 (N.D. Ill. 2022) (quoting *Abebe v. Health & Hosp. Corp. of Marion Cnty.*, 35 F.4th 601, 608 (7th Cir. 2022)). "The evidence presented 'must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself.'" *Lesiv v. Ill. Cent.*

*R.R. Co.*, 39 F.4th 903, 911 (7th Cir. 2022) (quoting *Ortiz v. Werner Enter., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)). "Ultimately, the inquiry comes down to one question: 'Does the record contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused' the materially adverse action?" *Id.* (quoting *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016)). The first two elements of Anaya's prima facie case are not in contention as the parties agree that he engaged in protected activity and was ultimately terminated. The parties do, however, dispute whether the causation element is met.

A plaintiff demonstrates a causal connection by showing that the defendant would not have taken the adverse action but for his protected activity. *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017). To show causation, "the plaintiff may submit direct or circumstantial evidence to show that h[is] employer's action was retaliatory and thus not free from any discrimination." *Adebiyi v. S. Suburban Coll.*, No. 22 C 2516, 2024 WL 1652655, at *4 (7th Cir. Apr. 17, 2024) (quoting *Huff v. Buttigieg*, 42 F.4th 638, 646 (7th Cir. 2022)). "Relevant circumstantial evidence may include 'suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual.'" *Id.* (quoting *Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 924 (7th Cir. 2019). Under the framework established in *Ortiz*, the Court considers the evidence as a whole. *Id.*

Anaya argues that he is entitled to summary judgment on his retaliatory termination claim because the facts leading up to his termination are undisputed and the evidence proves that his protected activity was connected to the termination of his employment. In support of his argument, Anaya relies on four critical facts. First, Anaya asserts that Reed did not immediately terminate him after learning that he had taken allegedly confidential documents. Instead, Defendants continued to press him to turn on Fairweather, and hours after his refusal, he was terminated. In

response, Defendants argue that suspicious timing alone is not enough to demonstrate causation. Nevertheless, Defendants try to rebut Anaya's theory by claiming they did not discover until later in the day on April 23, 2021 that Anaya was sending emails to his personal account, and it was then that they determined he could no longer be given the benefit of the doubt and had to be fired. Additionally, Defendants claim they did not immediately terminate Anaya because Reed wanted its computer equipment and passwords back.[6]

"A plaintiff may create a triable causation issue by demonstrating that an adverse employment action followed 'close on the heels' of his protected speech." *Kingman v. Frederickson*, 40 F.4th 597, 603 (7th Cir. 2022) (citing *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012)). Here, Anaya contends that only hours passed between his protected activity and his termination. Defendants fail to conclusively establish that their reason for terminating Anaya was because they learned that he was sending documents to his personal email account. FTI's email informing Defendants about Anaya's conduct was sent on April 23, 2021, at 17:49. (Defs.' SOF, Ex. O, Dkt. 122-17). Anaya was terminated sometime in the afternoon on April 23, 2021, but it is not clear from the record if that occurred before or after FTI's email. Furthermore, Anaya points out that Birck did not mention passwords during their conversation on the morning of April 23, 2021, thereby creating a factual dispute on a material issue. A reasonable jury could find that the timing of the events establishes that Anaya's termination was connected to his protected activity. *See Kotoklo v. DePaul Univ.*, No. 20 C 635, 2021 WL 4477947, at *12 (N.D. Ill. Sept. 30,

---

[6] Anaya objects to this testimony on the ground that Defendants are trying to use a "sham-affidavit" to introduce evidence of Reed's alleged desire to get the equipment and passwords back before terminating Anaya. (Anaya Reply, Dkt. 141). "In this circuit the sham-affidavit rule prohibits a party from submitting an affidavit that contradicts the party's prior deposition or other sworn testimony." *James v. Hale*, 959 F.3d 307, 316 (7th Cir. 2020). Upon review of Birck's deposition testimony, it is clear that the declaration adds facts that were not elicited in the deposition; however, the declaration does not contradict the deposition testimony. Accordingly, the affidavit is proper.

2021) (finding that a reasonable jury could find that protected activity caused termination where employer made decision to terminate employee within hours of protected activity).

Second, Anaya highlights the fact that Reed hired FTI to investigate him even though Reed had no reason to believe that he was doing anything improper. Relying on *Canada v. Samuel Grossi Sons, Inc.*, 49 F.4th 340 (3rd Cir. 2020) and *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635 (7th Cir. 2013), Anaya contends that an employer may not launch a pretextual investigation and then use the results of the investigation to justify terminating an employee who engaged in protected activity. Here, FTI was retained on April 19, 2021 to investigate Anaya's activities and whether he and Fairweather had been communicating about legal action. Reed has not pointed to any evidence to show that prior to retaining FTI, it had reason to believe that Anaya was engaged in wrongdoing related to its computer systems. In fact, Reed admitted that as of April 14, 2021, Birck and Kreuger were not aware that Anaya had been "misusing or abusing his access to Reed's servers, systems, electronic files or data." (Defs.' Resp. to Plt.'s SOF, ¶ 24). Thus, when construed in Anaya's favor, the evidence could support a jury finding that Defendants launched an unwarranted investigation and used the results to justify his termination. *See Hobgood*, 731 F.3d at 647.

Third, Anaya points to the fact that Reed did not follow its own procedures with respect to his termination. An employer's failure to follow its own internal employment procedures can constitute evidence of pretext. *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 727 (7th Cir. 2005). Here, it is undisputed that Reed typically makes hiring and firing decisions as a team with leadership and the affected employee's manager having input, but Polino was not told about Anaya's termination until after the fact. Reed argues that Polino was in no position to provide input into the termination decision, as she only been his supervisor for nine days. Reed argues that under

these circumstances, the failure to include Polino does not support a claim for retaliation. A reasonable jury could find otherwise.

Finally, Anaya points to an email Birck sent regarding his views on the Black Lives Matter movement at a university. Defendants do not dispute the content of the email, but they argue that it is unrelated to Anaya's claims. Not necessarily. "Summary judgment [in favor of the defendant] generally is improper where the plaintiff can show that an employee with discriminatory animus provided factual information or other input that may have affected the adverse employment action." *Dey v. Colt Const. & Dev. Co.*, 28 F.3d 1446, 1459 (7th Cir. 1994).

Viewing the evidence here, "the Court finds that a reasonable jury could conclude that [the evidence], taken together, provide[s] sufficient evidence of causation, but that the evidence is not sufficient to support judgment as a matter of law." *Henson v. Canon Bus. Sols., Inc.*, 69 F. Supp. 3d 730, 740-41 (N.D. Ill. 2014) (finding that two statements offered as direct evidence of causal connection between protected activity and adverse employment action did not establish but-for causation as a matter of law). In sum, Defendants have not shown that Anaya cannot meet his burden of establishing a *prima facie* case of retaliatory termination as a matter of law.

Notwithstanding the factual disputes surrounding causation, Defendants argue that they are still entitled to summary judgment because they had legitimate, non-discriminatory reasons for terminating Anaya's employment, including: (1) Anaya's refusal to cooperate with the investigation of claims of racism; (2) Anaya granting himself delegate access to the emails of Reed executives; and (3) Anaya copying confidential communications to his personal email address. "Summary judgment is appropriate only if a reasonable fact finder would be compelled to believe [Reed's] explanation." *Lord*, 839 F.3d at 564. *See also Maier v. United Parcel Serv., Inc.*, No. 21 C 3506, 2024 WL 867136, at *21 (N.D. Ill. Feb. 29, 2024) ("If a plaintiff can assemble from

various scraps of circumstantial evidence enough to allow the trier of fact to conclude that it is more likely than not that discrimination lay behind the adverse action, then summary judgment for the defendant is not appropriate.").

The evidence in the record goes both ways. A reasonable fact finder could conclude that Defendants terminated Anaya for engaging in protected activity, as Anaya argues, or that Defendants terminated Anaya after the protected activity but for legitimate reasons, as Defendants argue. The ultimate determination will depend on how the fact finder views the evidence. In that situation, summary judgment is not warranted for either side. *See Malozienc v. Pac. Rail Servs.*, 606 F. Supp. 2d 837, 857 (N.D. Ill. 2009) ("Summary judgment is inappropriate when alternate inferences can be drawn from the evidence, as the choice between reasonable inferences from facts is a jury function."); *Gettis v. Ill. Dep't of Transp.*, No. 09 C 639, 2011 WL 1232817, at *3 (S.D. Ill. Mar. 30, 2011) ("Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that alternate inferences can be drawn from the available evidence.") (internal quotations omitted).

Accordingly, summary judgment is denied as to Anaya and as to Defendants on Count II of the FAC.

### C.      Unsupported Counterclaims (Count III)

Anaya argues that he is entitled to summary judgment on his retaliation claim arising from Reed's filing of its counterclaims because there is no dispute about the impropriety of Reed's counterclaims. Conversely, Defendants argue that they are entitled to summary judgment because filing a counterclaim is not sufficient to state a claim for retaliation. The Court agrees with Defendants.

The Seventh Circuit has stated that in rare cases, some actions taken in the course of litigation could constitute retaliation. *See Steffes v. Stepan Co.*, 144 F.3d 1070, 1076 (7th Cir. 1998) ("[I]t will be the rare case in which conduct occurring within the scope of litigation constitutes retaliation."). "Indeed, the only circumstance in which the filing of a compulsory counterclaim might constitute retaliation is where the counterclaim is totally baseless." *Ergo v. Int'l Merch. Servs., Inc.*, 519 F. Supp. 2d 765, 781 (N.D. Ill. 2007) (citing *Beltran v. Brentwood N. Healthcare Ctr., LLC*, 426 F. Supp. 2d 827, 834 (N.D. Ill. 2006)). There is good reason for this rule. "[I]f the mere filing of a counterclaim were sufficient to give rise to a retaliation claim, then every defendant in an FLSA, Title VII[,] or ADA lawsuit who asserts a counterclaim would be subject to a retaliation claim. Because filing a counterclaim is different from initiating a lawsuit, courts in this district repeatedly have ruled that filing a counterclaim, without more, is not an adverse action and thus cannot support a retaliation claim." *Beltran*, 426 F. Supp. 2d at 833-34 (internal citations omitted).

Here, the Court is unable to conclude that Reed's counterclaims are baseless. As discussed *infra*, even though the Court finds that Anaya is entitled to summary judgment on Reed's counterclaims, "that is not equivalent to stating that it is baseless, which is to say frivolous." *Ergo*, 519 F. Supp. 2d at 781. Defendants have presented substantial evidence to support their belief that Anaya violated the CFAA, breached his fiduciary duty, and breached the Agreement by accessing the emails of senior leadership, sending such emails to himself, and refusing to provide Reed with the passwords to its systems and files. Notably, most of the facts underlying Reed's counterclaims occurred during Anaya's employment. As such, it would be improper to punish Reed for asserting compulsory claims for alleged violations of law that occurred prior to Anaya's termination. *See Ergo*, 519 F. Supp. 2d at 780-81 ("The filing of a compulsory counterclaim is a particularly

unlikely basis for a retaliation claim for a number of reasons: the . . . plaintiff will have already asserted his or her rights, it will not cause the plaintiff to hire a lawyer or incur significant additional expenses, and (most significantly) the Defendant must bring compulsory counterclaims or risk waiving them.").

Accordingly, summary judgment is granted in favor of Defendants and against Anaya on Count III of the FAC.

### D.    Violation of COBRA (Count V)

Anaya argues that he is entitled to summary judgment on his COBRA claim because Reed failed to send notice to his then current address. Defendants counter that they are entitled to summary judgment because Reed mailed the notice to the address Anaya had on file. Anaya is correct that "[f]ederal law requires that an employee benefits plan sponsor notify a departing employee of their right to continue coverage." (Plt. Resp. at 19) (citing 29 U.S.C. § 1161). Anaya is also correct that "[t]his notice must be delivered through 'measures reasonably calculated to ensure actual receipt of the material by the plan participant.'" (*Id.*) (citing 29 C.F.R. §2520.104b-1(b)(1)). Nevertheless, he misinterprets the requirements mandated by COBRA.

"[T]he issue is not whether the former employee actually received notice; the issue is whether the plan administrator caused the notice to be sent in a good faith manner reasonably calculated to reach the former employee." *Keegan v. Bloomingdale's, Inc.*, 992 F. Supp. 974, 977 (N.D. Ill. 1998) (internal quotations omitted). Notice by first class mail addressed to the former employee's last known address is an acceptable method of notification. *Id.*

In *Friedman v. Dynamic Healthcare, Inc.*, No. 18 C 2724, 2020 WL 610024, at *1 (N.D. Ill. Feb. 5, 2020), the plaintiff alleged that his former employer failed to give proper notice of his rights under COBRA. In support of his argument, the plaintiff argued that the defendant should

have known the notice was sent to his old address because the defendant's CEO had been to the plaintiff's new home. *Id*. at 3. The court disagreed, explaining that even assuming the CEO knew where the plaintiff lived, there was no evidence that the CEO knew that the plaintiff could not, or would not, also receive mail at the address that was on file. *Id*. Further, the court explained that to act on such knowledge, the CEO would have had to reach out to the plaintiff and instruct him to change his address or change the address in the health insurance system without plaintiff's permission. *Id*. "Good faith does not require such measures." *Id*. Accordingly, the court found that no reasonable juror could find for the plaintiff. *Id*.

That logic applies in this case. Anaya argues that Reed knew it was required to send notice to Anaya's residence in Mokena, Illinois because it sent his termination letter there. Despite taking this position, Anaya admits that he does not recall actually submitting a state or federal W-4 form with his new address after he moved from Indiana to Illinois in November 2019. And although Anaya testified that he logged onto Paycom and changed his address after his move, his last paystub after his employment ended in April 2021 reflects the Indiana address. Reed was not required to update Anaya's address in its system on its own accord. Reed, through its third-party administrator, mailed the notice to Anaya's address on file, which was sufficient to satisfy its statutory obligations.

Accordingly, summary judgment is granted in favor of Defendants and against Anaya on Count V of the FAC.

## II.    Reed's Counterclaims

### A.    Computer Fraud and Abuse Act (Count I)

The statutory purpose of the CFAA is to punish trespassers and hackers. *Bittman v. Fox*, 107 F. Supp. 3d 896, 900 (N.D. Ill. 2015). Accordingly, to succeed on its CFAA claim, Reed must

show that Anaya intentionally accessed a computer without authorization or by exceeding his authorized access, and thereby obtained information from a protected computer. *Motorola, Inc. v. Lemko Corp.*, 609 F. Supp. 2d 760, 766 (N.D. Ill. 2009) (citing 18 U.S.C. § 1030(a)(2)). Reed must also prove that it "suffered damage or loss of at least $5,000." *ExactLogix, Inc. v. JobProgress, LLC*, 508 F. Supp. 3d 254, 262 (N.D. Ill. 2020). Here, Reed argues that it is entitled to summary judgment because there is ample evidence that Anaya accessed Reed's computer system, read confidential communications among Reed executives, and transferred emails to his personal email address. Anaya disagrees, arguing instead that he is entitled to summary judgment because he did not exceed his authorized access and Reed did not suffer any economic harm as a result of his actions.

Relying on a recent Supreme Court case, Anaya argues that "us[ing] his master control to allow him to read (and then forward) certain emails" does not violate the CFAA. (Anaya Resp. at 23-4) (citing *Van Buren v. United States*, 593 U.S. 374, 374 (2021)). In *Van Buren*, the Court held that "an individual 'exceeds authorized access' when he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him." 593 U.S. at 396. Reed argues that Anaya's conduct is distinguishable from the conduct at issue in *Van Buren* because while Anaya had the ability to access Reed's computer files, Anaya did not have the authority to obtain the information in those files.

In *Van Buren*, a police officer ran a license-plate search in a law enforcement computer database in exchange for money. *Id.* at 378. It was undisputed that the officer's conduct violated his department's policy, which authorized him to obtain database information for law enforcement purposes only. *Id*. But because both parties agreed that the officer had access to the system used to

21

retrieve license-plate information, the Supreme Court held that the officer did not exceed authorized access, even though he obtained the information for an improper purpose. *Id.*

Similarly, in *Pable v. Chi. Transit Auth.*, 615 F. Supp. 3d 842, 844 (N.D. Ill. 2022), a computer programmer and analyst discovered a "skeleton key," which allowed him to post unauthorized alerts on the defendant's system. The defendant there argued that the employee accessed the computer with authorization, but then exceeded his authorization when he encrypted the primary drive and installed a secondary drive on the computer. *Id.* at 845. While the court found that the defendant's claim was different from the claim in *Van Buren*, where the employee did something he was authorized to do in the course of his job duties, the court found that difference was of no legal significance. *Id.* The court explained that "one either can or cannot access a computer system, and one either can or cannot access certain areas within the system." *Id.* (citing *Van Buren*, 593 U.S. at 376). And in the employee's case, "he accessed the system through gates that were 'up' to him, and that once inside, he took actions prohibited by the [defendant's] 'rules, regulations, and policies.'" *Id.* Such a claim "claim falls squarely within *Van Buren*'s purview." *Id.*

Here, it is undisputed that Anaya had administrative access to Reed's servers and systems. As in *Van Buren* and *Pable*, Anaya accessed Reed's email system "through gates that were 'up' to him" and once inside he allegedly took prohibited actions—i.e. reading executive's emails and sending certain emails to his personal email address. Anaya's conduct may have been improper, but it does not violate the CFAA.

Accordingly, summary judgment is granted in favor of Anaya and against Reed on Count I of the counterclaim.[7]

### B.    Breach of Fiduciary Duty (Count II)

"To recover for a breach of fiduciary duty, Illinois law require[s] the plaintiff[] to establish [1] the existence of a fiduciary duty, [2] a breach of that duty, and [3] damages proximately caused by the breach." *Alonso v. Weiss*, 932 F.3d 995, 1001 (7th Cir. 2019). Reed argues that Anaya breached his fiduciary duty when he took Reed's computer system passwords and refused to return them. In response, Anaya argues that he did not breach his fiduciary duty because (1) he did not use the documents to do anything other than prosecute this litigation; (2) he did not have a duty to Reed after he was terminated; and (3) he promptly turned over the passwords after Reed asked for them. While Anaya's position that he had no further IT-related obligations to Reed after his termination is somewhat disingenuous, the Court nonetheless concludes that Reed has failed to establish the existence of a fiduciary duty.

"A fiduciary duty arises either as a matter of law or by special circumstances." *Autotech Tech. Ltd. P'ship v. Automationdirect.com*, 471 F.3d 745, 748 (7th Cir. 2006). "Particular relationships, such as attorney-client and principal-agent, constitute fiduciary relationships as a matter of law." *Crichton v. Golden Rule Ins. Co.*, 358 Ill. App. 3d 1137, 1149 (2005). "A fiduciary relationship might also arise as a result of the special circumstances of the parties' relationship, where one party places trust in another so that the latter gains superiority and influence over the former." *Id.* "The relevant factors to determine whether a fiduciary relationship exist[s] based on 'special circumstances' include the degree of kinship between the parties, the disparity in age,

---

[7] The parties also dispute whether Reed suffered damage or loss of at least $5,000. Having found that Reed's claim fails because it has not established that Anaya accessed a computer without authorization or by exceeding his authorized access, the Court need not consider whether the damages element of Reed's claim is met.

health, mental condition, education, and business experience between the parties, and the extent to which the servient party entrusted his business affairs to the dominant party and placed trust and confidence in it." *Id*. "When the relationship between the parties is not one that gives rise to a fiduciary relationship as a matter of law, the party asserting the existence of the relationship has the burden of pleading and proving such by clear and convincing evidence." *Martin v. State Farm Mut. Auto. Ins. Co.*, 348 Ill. App. 3d 846, 851 (2004).

Reed argues that Anaya was the only person with the passwords. That may be true, but Reed has failed to present any evidence about the relevant factors that would show a fiduciary relationship based on special circumstances exists. Reed generally cites *Lawlor v. N. Am. Corp. of Ill.*, 2012 IL 112530, ¶ 69 for the proposition that "employees owe a fiduciary duty to their employer." (Defs.' Mem. at 20, Dkt. 121). In *Lawlor*, however, the Court considered whether an employee breached their fiduciary duty by diverting business away from its employer during the course of her employment. *Id.* at ¶ 72. That case is not relevant. Reed also relies on *ABC Trans Nat'l Transp., Inc. v. Aeronautics Forwarders, Inc*., 62 Ill. App. 3d 671 (1st Dist. 1978) for the proposition that employees cannot retain employers' property after termination. Similar to *Lawlor*, the *ABC* court was concerned with the defendants' use of the items and information at issue to compete against their former employer. *Id.* at 686-87. Again, that is not the situation here.

The Court has not located through its own research, and Reed has not identified, any cases holding that a fiduciary duty is created merely because an employee possessed and refused to return information that its employer could not easily access. Reed has not met its burden to show that a fiduciary duty exists under these circumstances.

Accordingly, summary judgment in granted in favor of Anaya and against Reed on Count II of the counterclaim.

## C.    <u>Breach of Contract (Count IV)</u>

"Under Illinois law, a plaintiff asserting a breach of contract claim must plead and prove: (1) the existence of a contract, (2) the performance of its conditions by the plaintiff, (3) a breach by the defendant, and (4) damages as a result of the breach." *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 626 (7th Cir. 2013) (internal quotations omitted). Reed argues that Anaya breached the Agreement by reading communications among Reed's executives and transferring Reed's computer passwords to himself. Anaya counters that he did not breach the Agreement because the documents he took were not confidential, and even if they were, the Agreement allows him to share information with his attorney and to use such material in connection with litigation.

In support of his argument that the documents are not confidential, Anaya points to the fact that Reed did not ask the Court to compel him to return the documents or protect the documents through the confidentiality order entered in the case. In ruling on a motion to compel filed in this case, the magistrate judge held that Reed could not use the fact that Anaya obtained information through illegal means to avoid responding to certain discovery because Reed later produced the same information without designating it as confidential. Anaya now tries to rely on this ruling to argue that Reed cannot claim that documents which it did not designate as confidential during discovery were confidential under the Agreement. But that was not what the magistrate judge held. While Reed's failure to designate these documents as confidential during discovery arguably undermines its current position on summary judgment, such a failure is not fatal. Accordingly, the Court turns to the merits of Anaya's argument about his use of the documents in connection with litigation, which is more persuasive.

Section 2.g. of the Confidentiality Agreement provides that:

> [Y]ou will not be in violation of this Agreement if you (i) disclose Confidential Information to your own attorney in connection with any court proceeding brought by you against Reed alleging retaliation in respect of your reporting of a suspected violation of law, or (2) use Confidential Information in such court proceeding, provided that all documents containing Confidential Information are filed under seal and are not disclosed except by court order.

(Reed Countercl, Ex.2, at 2.)

Reed has not come forward with any evidence to show that Anaya used the documents to do anything other than prosecute this litigation. Reed posits that most of the documents Anaya took are unrelated to his claims and the exception quoted above does not apply to certain documents, such as privileged communications. Despite Reed's argument, there is nothing in Section 2.g. of the Agreement that carves out particular types of documents. At this juncture, because the only evidence before the Court is that Anaya used the documents to prosecute this litigation, the exception applies, and Reed has not established as a matter of law that Anaya breached the Agreement.

Accordingly, summary judgment is granted in favor of Anaya and against Reed on Count V of the counterclaim.

## III.  <u>Anaya's Rule 11 Motion</u>

Finally, Anaya filed a motion for Rule 11 sanctions against Reed and its attorney, Kearney Kilens. Anaya contends that Reed's counterclaims are factually unsupported, contradicted by the findings of Reed's own investigator, and maintained for the improper purpose of retaliating against him. In response, Reed and its attorney contend that, at the time of filing, Reed had a reasonable basis to believe that each of its counterclaims was supported by evidence and law and there is no

indication of any improper purpose. Many of the arguments that were raised by the parties in the Rule 11 briefs relate to the substance of Reed's claims and have been addressed *supra*.

"Federal Rule of Civil Procedure 11(b) requires that attorneys certify to the best of their knowledge, information, and belief, formed after an inquiry reasonable under the circumstances that their filings have adequate foundation in fact and law and lack an improper purpose." *Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 957 (7th Cir. 2020) (citing Fed. R. Civ. P. 11(b)) (internal quotations and alterations omitted). "Improper purposes include 'to harass, cause unnecessary delay, or needlessly increase the cost of litigation.'" *Bruger v. Olero, Inc.*, No. 19 C 2277, 2023 WL 6290090, at *12 (N.D. Ill. Sept. 27, 2023) (citing Fed. R. Civ. P. 11(b)(1)). "If the court determines that a lawyer or party has violated Rule 11(b), the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." *Id.* (citing Fed. R. Civ. P. 11(c)) (internal quotations omitted).

The Court has now determined after considering the evidence and legal arguments that Anaya is entitled to summary judgment on all of Reed's counterclaims. However, the Court does not find that Reed's counterclaims had an inadequate foundation in fact or law to support an award of sanctions. *See Diamond v. Nicholls*, 483 F. Supp. 3d 577, 597 (N.D. Ill. 2020) ("Although the Court is granting summary judgment for [defendant], and although the veracity of [plaintiff's] allegations is questionable, the Court cannot say that [plaintiff's] claims were 'so devoid of factual support that sanctions were appropriate.'"); *Great E. Ent. Co. v. Naeemi*, No. 14 C 4731, 2015 WL 6756283, at *2 (N.D. Ill. Nov. 5, 2015) ("Plaintiffs' evidence against [defendant] was weak, but not so groundless as to warrant sanctions."). Nor does the Court find that Reed asserted these counterclaims for an improper purpose. As already noted, there are multiple remaining factual

disputes about the conduct and motives of all parties here to support counterclaims arising out of the termination of Anaya's employment.

Accordingly, Anaya has not shown that Rule 11 sanctions are warranted.

## **CONCLUSION**

For all the reasons stated above, (1) regarding the FAC—summary judgment is granted in favor of Defendants on Counts I (retaliatory failure to promote), Count III (retaliatory filing of counterclaims), and Count V (violation of COBRA), and denied as to both Plaintiff and Defendants on Count II (retaliatory termination); (2) regarding Counter-Plaintiff Reed's counterclaim— summary judgment is granted in favor of Counter-Defendant Anaya and against Counter-Plaintiff Reed on Count I (violation of the CFAA), Count II (breach of fiduciary duty), and Count IV (breach of contract); and (3) Plaintiff Anaya's motion for Rule 11 sanctions is denied. Consequently, the only claim left for trial is Count II of the FAC for retaliatory termination.

**DATED**: May 15, 2024

**ENTERED**:

_____
LASHONDA A. HUNT
United States District Judge